**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.   1:24-cv-02810-PAB-STV

STEPHEN SPARKS,

     Plaintiff,

v.

ANDRE STANCIL;
CHARLES WYNTER;
CHRISTIE GROKETT;
JOHN DOE; and
JANE DOE,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Chief Magistrate Judge Scott T. Varholak

     This matter comes before the Court on the Motion to Dismiss Amended Complaint [#20] (the "Motion"), filed by Defendants Andre Stancil, Charles Wynter, and Christie Grokett, which has been referred to this Court [#26].  This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **DENIED** with respect to Claim One against Defendant Wynter and **GRANTED** with respect to all other Defendants and all other Claims.

I.      **BACKGROUND**[1]

Plaintiff Stephen Sparks is a convicted and sentenced state prisoner within the Colorado Department of Corrections ("CDOC") system.  [#11 at 3[2]]  During the events giving rise to this case, Plaintiff was incarcerated at Limon Correctional Facility ("LCF").  [*See* #34-1 at 1]  Defendant Andre Stancil is the Director of the CDOC, Defendant Charles Wynter is a Sargeant working for the CDOC, and Defendant Christie Grokett is a Supervisor Nurse working with CDOC inmates.  [#11 at 3-4]

Plaintiff has a chronic blood clotting condition.  [*Id.* at 6-7]  On January 20, 2024, Plaintiff was examined by a nurse, who is not a party to this action, for blood clots.  [*Id.* at 6]  When the nurse discovered a lump and warmth in Plaintiff's leg, she informed both Defendant Grokett and an on-call provider, Christopher Love, who is also not a party to this action.  [*Id.*]  Defendant Grokett spoke with security at LCF to allow for transportation of Plaintiff to a hospital for an emergency medical visit.  [*Id.* at 7]

That same day, Defendant Wynter and Correctional Officer Sample, who is not a party to this action, transported Plaintiff to Lincoln Community Hospital ("LCH").  [*Id.* at 5]  They were asked to transport Plaintiff by Defendant John Doe, who is a "facility shift commander."  [*Id.*]  When Plaintiff arrived at the emergency area of LCH, Defendant Wynter briefly left to take a personal phone call.  [*Id.*]  Officer Sample remained in the area.  [*Id.*]

---

[1] The facts are drawn from the allegations in Plaintiff's Amended Complaint (the "Complaint") [#11], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

[2] References to page numbers in Plaintiff's Amended Complaint are to the CM/ECF page number printed by the Clerk's Office on the top of the page.

The emergency doctor determined that Plaintiff needed an ultrasound on his legs. [*Id.*]  At the time, Plaintiff was wearing transportation restraints that caused the doctor difficulty in viewing the affected area.  [*Id.*]  As a result, Officer Sample began removing Plaintiff's upper restraints so that Plaintiff could be placed into a medical gown.  [*Id.*] During this process, Defendant Wynter returned to the emergency area and asked Officer Sample not to remove Plaintiff's restraints.[3]  [*Id.*]  Officer Sample stopped the removal and asked the doctor if he took issue with Plaintiff's restraints being temporarily removed to allow a gown to be placed onto Plaintiff.  [*Id.*]  Though the doctor stated that he did not take issue with this, Defendant Wynter continued to demand that Officer Sample not remove Plaintiff's restraints.  [*Id.*]  At this time, Plaintiff believed that Defendant Wynter would not allow Plaintiff to be examined, so Plaintiff asked to leave the hospital and return to LCF.  [*Id.*]

When Plaintiff returned to LCF, he attempted to inform Defendant Grokett that he had not refused medical treatment.  [*Id.* at 5]  Before Plaintiff explained what occurred at LCH, Defendant Grokett ordered Plaintiff back to his housing unit.  [*Id.*]  Upon returning to the facility, Defendant Wynter did not inform his supervisors of what occurred at LCH. [*Id.* at 6]  Defendant Wynter later explained that he did not report anything because "he felt it was not noteworthy."  [*Id.*]

Nevertheless, on that same day, Officer Sample submitted a chronological report detailing what occurred when Plaintiff was at LCH.  [*Id.* at 7]  Officer Sample's report

---

[3] Plaintiff alleges that CDOC Administrative Regulation ("A.R.") 300-37 gives officers discretion to let an offender out of their restraints for the purpose of medical examinations and treatment.  [*Id.* at 6]  The Court has not been provided with a copy of this regulation, which is restricted.  Defendant Stancil authorizes all CDOC regulations.  [*Id.* at 3, 6]

described the following events: "When the physician was attempting to view the troubled area on [Plaintiff's] upper left thigh he was not able to see it while in the transport restraints.  To try and make it easier I then put on normal wrist restraints and then removed the transport restraints to keep [Plaintiff] secured, the physician was still unable to properly see the troubled area."  [#34-1 at 1][4]  Officer Sample then described asking the physician if he would be comfortable with Officer Sample taking off Plaintiff's normal wrist restraints to make the process easier, to which the doctor responded that he was okay with it if Officer Sample was okay with it.  [*Id.*]  At that point, Officer Sample described that "the other transport staff advised me to stop and that he did not want me to remove them."  [*Id.*]

Plaintiff was in "excessive pain" upon returning to LCF.  [#11 at 5] Nonetheless, after Plaintiff's return to LCF, Defendant Grokett did not inform the facility's on-call provider that Plaintiff was not examined at LCH.  [*Id.* at 7]  Plaintiff filed a grievance about his experience at LCH on January 23, 2024.  [*Id.* at 8; #34-1 at 4]  Plaintiff filed additional grievances at later dates.  [#34-1 at 5-6]

---

[4] This quotation was included in an exhibit that was attached to Plaintiff's Response to the Motion to Dismiss.  [#34]  Plaintiff also included this exhibit in his original Complaint [#1], but failed to attach the exhibit to his Amended Complaint [#11].  When deciding a motion to dismiss, the court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).  Plaintiff refers to this document in his Amended Complaint [#11 at 7] and it is central to Plaintiff's claim of retaliation.  Though Defendants argue that this exhibit cannot be considered, Defendants do not appear to dispute the authenticity of the document.  [#37 at 5]  Rather, Defendants contend that the exhibit "confirm[s] that the physician did not request the restraints be removed and that [Plaintiff] himself terminated the treatment."  [*Id.*]  The Court thus finds that it can consider this exhibit because it is referred to in the Complaint, is central to Plaintiff's claims, and the parties have not disputed the exhibit's authenticity.

For the next two months, Plaintiff continued to complain to unknown individuals of pain in his leg.  [*Id.* at 7]  While receiving a COVID booster shot, Plaintiff spoke with the facility Health Supervisor Administrator ("HSA") Sara West, who is not a party to this action, about the events that took place on January 20, 2024.  [*Id.*]  The HSA was not aware that Plaintiff had not been treated during his trip to LCH or thereafter.  [*Id.*]

On March 20, 2024, Defendant Wynter entered two chronological reports giving an account of the events that took place at LCH on January 20, 2024.  [*Id.* at 7]  These reports were "false accounts" that were contradicted by the chronological reports submitted by Officer Sample.  [*Id.*]  One of the reports was back dated January 20, 2024, and one was recorded on March 20, 2024.  [*Id.*]  Plaintiff alleges that Defendant Wynter's false reports may impact him in a future application for clemency.[5]  [*Id.* at 8]

About a month after speaking with HSA West, Plaintiff began receiving treatment for his condition.  [*Id.* at 5]  The delay in treatment caused Plaintiff to suffer atrial fibrillation, additional blood clots, and a greatly enlarged lymph node which required surgery to correct.  [*Id.*]  Because of Plaintiff's atrial fibrillation, Plaintiff was required "to have his heart shocked by placing a device down his throat to shock the backside of his heart." [*Id.* at 7]  Plaintiff requires additional heart treatments for the remainder of his life.  [*Id.*] The delay in treatment also caused Plaintiff to develop deep vein thrombosis.  [*Id.*]

Plaintiff filed this action on October 10, 2024.  [#1]  The operative Complaint brings four claims against Defendants pursuant to 42 U.S.C. § 1983.  [#11 at 5-8]  In Claim One, Plaintiff alleges deliberate indifference to serious medical needs by Defendants Wynter

---

[5] It is unclear to what extent Plaintiff had initiated an application for clemency at the time of the filing of the Amended Complaint.

and Grokett, in their individual capacities, in violation of the Eighth Amendment of the United States Constitution.  [*Id.* at 4-6]  In Claim Two, Plaintiff alleges abuse of discretion by Defendant Stancil, in his official capacity, and Defendant Wynter, in his individual capacity, for "violations" of CDOC A.R. 300-37.  [*Id.* at 3-4, 6]  In Claim Three, Plaintiff alleges a failure to treat by Defendant Grokett, in her individual capacity, in violation of the Eighth Amendment to the United States Constitution.  [*Id.* at 4, 6-7]  In Claim Four, Plaintiff alleges retaliation by Defendant Wynter, in his individual capacity, in violation of the First Amendment to the United States Constitution.  [*Id.* at 4, 7-8]  Plaintiff seeks relief in the form of: (1) an alteration to CDOC A.R. 300-37 that would prevent transport officers from exercising unchecked authority to require offenders to wear restraints when a doctor needs the restraint to be removed to perform an examination on the offender and (2) pain and suffering in the amount of five million dollars.  [*Id.* at 10]

Defendants filed the instant Motion on April 7, 2025.  [#20]  The Motion seeks to dismiss each of Plaintiff's claims.  [*Id.*] Plaintiff has responded to the Motion [#34] and Defendants have replied [#37].

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . .  and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on

mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"[A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

### III.    ANALYSIS

#### A.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity on the individual capacity claims.    [#20 at 4-5, 9-10] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).  Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018).  The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Id.* at 66 n.8.  The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established. . . . Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted) (emphasis in original). And the Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 590 (quotation omitted).

With these principles in mind, the Court turns to Defendants' qualified immunity defense.

### 1. Deliberate Indifference to Serious Medical Needs and Failure to Treat

Plaintiff brings two Eighth Amendment claims against Defendants. First, Plaintiff asserts a deliberate indifference to serious medical needs claim against Defendants Wynter and Grokett. [#11 at 5-6] Plaintiff alleges that Defendant Wynter was deliberately indifferent to Plaintiff's serious medical needs because he would not allow Plaintiff to remove his restraints to get a necessary ultrasound and did not report these events. [*Id.*] Plaintiff alleges that Defendant Grokett was deliberately indifferent to Plaintiff's serious medical needs because, once Plaintiff returned to LCF from LCH, Defendant Grokett sent him back to his housing unit without further addressing his medical condition. [*Id.* at 5] Second, Plaintiff asserts a failure to treat claim against Defendant Grokett. [*Id.* at 6-7] Plaintiff alleges that, though Defendant Grokett initially spoke with LCF security to get

Plaintiff transported to LCH, she did not further address or report Plaintiff's medical concerns when he returned from LCH untreated.  [*Id.* at 7]

The Eighth Amendment to the United States Constitution protects a prisoner's right to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).   "A prison official's deliberate indifference to an inmate's serious medical needs is a violation" of the Eighth Amendment.  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle*, 429 U.S. at 104).   "'Deliberate indifference' involves both an objective and a subjective component."   *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

"The objective component is met if the deprivation is 'sufficiently serious.'" *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.*  (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). "[A] delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).   "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Id.*  (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).  "The purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering."  *Id.* at 753.  And the Tenth Circuit has held that the minimum evidentiary requirement for the objective component can be met by showing that a prisoner "suffered

both unnecessary pain and a worsening of [their] condition—in the form of permanent and irreversible heart damage." *Id.* at 755.

"The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sealock*, 218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 837). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Mata*, 427 F.3d at 751. The subjective component "does not require a finding of express intent to harm." *Id.* at 752 (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996)). Rather, the subjective component is satisfied if "the official acted or failed to act despite his knowledge of a substantial risk of a serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 842) (emphasis omitted). Inferences from circumstantial evidence may be used to demonstrate that "a prison official had the requisite knowledge of a substantial risk." *Id.* (quoting *Farmer*, 511 U.S. at 842).

"The subjective component can be satisfied under two theories: failure to properly treat a serious medical condition ('failure to properly treat theory') or as a gatekeeper who prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment ('gatekeeper theory')." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (citing *Sealock*, 218 F.3d at 1211). Under the failure to properly treat theory, for example, the Tenth Circuit concluded that a doctor was deliberately indifferent when he was aware of gangrenous black hand tissue for multiple weeks, yet prescribed only Tylenol with codeine. *Oxendine*, 241 F.3d at 1277-79. And the Tenth Circuit has also made clear that "merely because an inmate

has seen several doctors does not 'necessarily mean that he received treatment for serious medical needs.'" *Lucas*, 58 F.4th at 1138 (quoting *Hunt*, 199 F.3d at 1224).

Under the gatekeeper theory, a gatekeeper may also be held liable even when an inmate receives some treatment. Under this theory, the court must assess whether there was a "functional equivalent to a complete denial of care." *Id*. The Tenth Circuit has held that a nurse fulfilled his duty as a gatekeeper when, while aware of "potentially alarming symptoms," he simply entered a request for referral in the prison's medical recordkeeping system. *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1179-80 (10th Cir. 2020). The Tenth Circuit reasoned that the gatekeeper had not completely refused to fulfill his duty because he did not "deny [an inmate] access to medical personnel capable of evaluating the need for treatment." *Id*. at 1180 (quotation omitted). And though the gatekeeper may have been negligent, negligence does not rise to the level of deliberate indifference. *Id*. On the other hand, the Tenth Circuit has found that a nurse failed to act as a gatekeeper when the nurse left an inmate complaining of a serious medical issues, paralysis, without administering care of any kind. *Burke v. Regalado*, 935 F.3d 960, 994-95 (10th Cir. 2019).

With these principles in mind, the Court turns to the claims against Defendants Wynter and Grokett.

### a.    Defendant Wynter

Plaintiff has plausibly alleged the objective component of the deliberate indifference standard because his medical deprivation was "sufficiently serious." Plaintiff alleges that he suffers from a chronic blood disorder. [#11 at 6] When he was being examined for blood clots, a nurse discovered warmth and a lump in his legs. [*Id*.] The

nurse was so alarmed by this finding that Plaintiff was shortly thereafter taken by emergency transportation to the hospital.  [*Id.* at 6-7]  It was later discovered that Plaintiff did indeed have blood clots in his leg.  [*Id.* at 7]  It is well known that blood clots, if left untreated, can lead to life-threatening conditions such as a stroke or heart attack. Accordingly, the nurse's discovery of evidence of blood clots in Plaintiff's legs created a sufficiently serious medical need to plausibly establish the objective component of the deliberate indifference standard.

Though delay in medical care only constitutes an Eighth Amendment violation where a plaintiff can show the delay resulted in a substantial harm, Plaintiff has alleged a substantial harm here.  Plaintiff states that he was in "excessive pain" after failing to receive treatment at LCH.  [*Id.* at 5]  Plaintiff also alleges that he will have to "endure heart treatments for the rest of his life" because he developed atrial fibrillation following the lack of treatment.  [*Id.* at 7]  Plaintiff also developed additional blood clots which resulted in deep vein thrombosis.  [*Id.*]  This is not trivial suffering.  It is significant, and certainly significant enough to plausibly establish the objective component of the deliberate indifference standard.

Defendants argue that Plaintiff has not met the objective component of his deliberate indifference claim because "there is no allegation that the physician required that the restraints be removed in order for him to render treatment."  [#20 at 7]  But, in addition to being an inaccurate interpretation of Plaintiff's Complaint (as explained below), Defendants fail to explain how this contention has anything to do with whether Plaintiff's medical deprivation was sufficiently serious to satisfy the objective component of Plaintiff's claim.  Thus, for the aforementioned reasons, Plaintiff has plausibly alleged that

his medical deprivation was sufficiently serious to meet the objective component of his deliberate indifference claim.

A closer question is whether Plaintiff has plausibly alleged the subjective prong of the deliberate indifference standard.  Plaintiff was transported by Defendant Wynter for a last-minute emergency visit to LCH.  [#11 at 5]  It can be inferred from these circumstances that Defendant Wynter was aware of the emergency nature of Plaintiff's medical condition.  It would be hard to imagine a situation where a transportation officer, en route to a hospital's emergency room, had no idea that the inmate they were transporting was facing an emergency medical situation.  As a result, Plaintiff has plausibly alleged that Defendant Wynter had knowledge that a risk of serious harm existed if Plaintiff were to not receive examination or treatment at LCH.

Plaintiff does not have to show that Defendant Wynter expressly intended to harm Plaintiff; rather, Plaintiff need only show that Defendant Wynter prevented Plaintiff from getting treatment despite Defendant Wynter's knowledge of a substantial risk of serious harm.  *Mata*, 427 F.3d at 752.  Plaintiff does so by alleging that Defendant Wynter repeatedly ordered Officer Sample to keep Plaintiff's restraints on while Plaintiff was supposed to receive a medical examination.  [#11 at 5]  Plaintiff alleges that his restraints needed to be taken off for the doctor to perform the ultrasound.  [*Id*.]  Defendant denies this fact, stating that the Amended Complaint does not suggest that "Wynter's exercise of discretion in this fashion had any impact on [Plaintiff's] ability to receive medical care." [#20 at 8]  The Court does not read the Amended Complaint in this manner.  The Amended Complaint states that Officer Sample attempted to remove Plaintiff's "upper restraints, (handcuffs) to allow a medical gown to be placed on to *allow* needed ultrasound

to be performed." [#11 at 5 (emphasis added)] In addition, Plaintiff states that he "attempted to tell Defendant Grokett that he was not examined and that he *did not refuse* to be treated." [*Id.* at 7 (emphasis added)] The "Inmate Case Note" written by Officer Sample additionally states that the physician "was not able to see [the troubled area] while [Plaintiff was] in the transport restraints."[6] [#34-1 at 1] Even when Plaintiff was in normal wrist restraints, Officer Sample states "the physician was still unable to properly see the troubled area." [*Id.*] Accordingly, though Plaintiff did not explicitly state that the ultrasound could not be performed without his restraints being removed, the Court may plausibly infer this fact from the Amended Complaint and Officer Sample's Inmate Case Note.

Accordingly, Plaintiff has alleged that Defendant Wynter acted as a gatekeeper who denied Plaintiff access to a doctor capable of evaluating Plaintiff's need for treatment. Plaintiff alleges that he did not receive any evaluation whatsoever because Defendant Wynter would not permit the doctor to effectively proceed with the evaluation. Though Plaintiff "met" with a doctor, Plaintiff alleges that he did not receive an evaluation or treatment for his medical needs for months because Defendant Wynter refused to allow the LCH doctor to perform the ultrasound and did not report such events.

Plaintiff has thus pled functional denial of access to a necessary medical evaluation which is actionable as deliberate indifference. This conclusion is supported by precedent, which states that the Eighth Amendment is violated when prison faculty "intentionally deny[] or delay[] access to medical care." *Estelle*, 429 U.S. at 104-05. Under the gatekeeper theory, "doing nothing in response to knowledge of harm is an

---

[6] As explained earlier, the Court may consider the Inmate Case Note when analyzing the Motion. *See supra* footnote 4.

unreasonable response evincing deliberate indifference." *Encinias v. New Mexico Corrs.*
*Dept.*, 659 F. Supp. 3d 1227, 1242 (D.N.M. 2023).   Defendant Wynter knew that Plaintiff
was experiencing a medical situation which required emergency medical care, he
prevented the emergency examination from occurring, and he did nothing to permit or
enable Plaintiff to receive further care.  Moreover, Defendant Wynter did not notify anyone
of his conduct and he did not take any action to ensure that Plaintiff was no longer at risk
of medical harm.   Defendants argue that Defendant Wynter was acting within CDOC
policy in declining to allow Plaintiff to remove his restraints [#20 at 8], but the existence
of this policy does not alter the conclusion that Plaintiff has adequately alleged that
Defendant Wynter functionally denied Plaintiff access to a necessary medical evaluation.
As a result, Plaintiff has adequately alleged that Defendant Wynter violated his Eighth
Amendment rights.

To determine whether Defendant Wynter is nevertheless entitled to dismiss Claim
One on grounds of qualified immunity, the Court must assess whether Plaintiff's
constitutional right was "clearly established" at the time the challenged act occurred.
*Quinn*, 780 F.3d at 1004.  To show that a right was "clearly established," a plaintiff need
not "present a case with an identical factual situation."  *Lundstrom v. Romero*, 616 F.3d
1108, 1119 (10th Cir. 2010).  "[O]fficials can still be on notice that their conduct violates
established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741
(2002).   A defendant must have "fair warning" that their alleged conduct was
unconstitutional based on the state of the law at the time of the alleged conduct.  *Id.*  To
make this determination, courts look to "Supreme Court or Tenth Circuit precedent on

point or clearly established weight of authority from other courts finding the law to be as the plaintiff maintains." *Lundstrom*, 616 F.3d at 1119.

As an initial matter, the Tenth Circuit has stated that "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right." *Mata*, 427 F.3d at 749. Indeed, the Tenth Circuit has reiterated this point on many occasions. *See Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1153 (10th Cir. 2022) ("The right to custodial medical care is well settled."); *Est. of Booker v. Gomez*, 745 F.3d 405, 433 (10th Cir. 2014) ("deliberate indifference to an inmate's serious medical need [violates] a clearly established constitutional right" (quoting *Mata*, 427 F.3d at 749)); *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1048 (10th Cir. 2022) ("[Plaintiff had a] constitutional right to be free from deliberate indifference to his serious medical conditions while in custody [which] was clearly established at the time of the relevant events.").

The Tenth Circuit has identified various circumstances in which a prisoner has adequately pled that a prison official denied them access to medical care in violation of the Eighth Amendment. For example, in *Casanova v. Ulibarri* a prison official defendant ordered an inmate plaintiff to be placed in a prison segregation unit without his prescribed CPAP machine and other medical belongings. 622 F. App'x 724, 727 (10th Cir. 2015). As a result of being deprived of his medical belongings for just over a month, the plaintiff experienced such severe physical deterioration that he required eleven months of hospitalization to recover. *Id.* The court emphasized that it was "of particular significance in this case that deliberate indifference [wa]s shown not only by failure to provide prompt attention to the medical needs of a [prisoner], but also by intentionally interfering with the treatment once prescribed." *Id.* at 728 (quoting *Martin v. Bd. Of Cnty. Comm'rs of Pueblo*

*Cnty.*, 909 F.2d 402, 406 (10th Cir. 1990)). Accordingly, the court found that the plaintiff had shown that the defendant intentionally interfered with the plaintiff's treatments "by personally refusing to allow him to keep the medical equipment which he needed and had been authorized to use in prison." *Id.* at 729. As a result, the court found that the plaintiff had presented sufficient evidence that the defendant acted with deliberate indifference to the plaintiff's serious medical needs. *Id.*

The Court in *Hunt* came to a similar conclusion. In *Hunt*, an inmate was denied access to insulin even though it had been prescribed to him. 199 F.3d at 1223. Additionally, the plaintiff alleged that he was denied a proper diagnosis and medically recommended treatment. *Id.* The plaintiff alleged that the denial of treatment resulted in him having a heart attack. *Id.* The court found that the plaintiff had alleged sufficient facts to state an Eighth Amendment claim. *Id.* at 1224.

In *Martinez v. Garden* the Tenth Circuit again reiterated the principle that denying an inmate access to recommended medical care is sufficient to state an Eighth Amendment violation. 430 F.3d 1302, 1305 (10th Cir. 2005). The inmate in *Martinez* had a cyst which a physician determined would require surgery if it did not resolve on its own within a month. *Id.* at 1303. Though the plaintiff's condition did not improve after a month, the defendants did not provide the required surgery or inform the plaintiff of medical appointments, causing the plaintiff to live in constant pain. *Id.* at 1303-04. The court found that the Complaint alleged that the defendants "knew of [the plaintiff's] serious medical condition, and despite this knowledge, failed to ensure that he received treatment," giving rise to an inference that the defendants acted with deliberate indifference in violation of the Eighth Amendment. *Id.* at 1305.

Other Circuits have addressed similar matters.  *See Presson v. Reed*, 65 F.4th 357, 369-370 (8th Cir. 2023) ("constitutional liability may follow [w]hen an official denies a person treatment that has been ordered or medication that has been prescribed" (quotations omitted)); *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) ("Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, . . . acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." (internal citations omitted)); *Gobert v. Lee Cnty.*, 510 F.3d 1312, 1331 (11th Cir. 2007) (holding that a reasonable corrections officer would know it is unlawful to simply "yell[] into a crowded room for someone else to get [an inmate] a doctor," or do even less, when the officer knows the inmate is experiencing a serious medical problem).

Defendant Wynter's deprivation is of the type that violates the well-established right of prisoners to timely treatment for serious medical conditions. *Casanova*, *Hunt*, and *Martinez* put Defendant Wynter on notice that his deprivation of emergency treatment violated Plaintiff's constitutional rights.  As in *Casanova*, Plaintiff here experienced a significant worsening of his condition because, as alleged, Defendant Wynter personally refused to allow Plaintiff to receive a medical examination which had been authorized by both the LCH doctor and the LCF faculty who ordered Plaintiff's transportation to LCH. As in *Hunt*, Plaintiff here was denied proper diagnosis and treatment which resulted in him developing severe and lifelong consequences to the functioning of his heart.  As in *Martinez*, Plaintiff here required treatment and lived in constant pain because he was prevented from receiving such treatment.  Therefore, Plaintiff has plausibly alleged that a

reasonable official would have understood that completely preventing Plaintiff from receiving emergency medical care was a violation of his Eighth Amendment rights. Defendant Wynter cannot thus dismiss Claim One on grounds of qualified immunity. Accordingly, the Court respectfully RECOMMENDS that the Motion be DENIED with respect to Claim One against Defendant Wynter.

### b.    Defendant Grokett

For the reasons previously described, Plaintiff has plausibly established the objective component of the deliberate indifference standard because he has shown that his medical deprivation was sufficiently serious.  Defendants also argue, however, that Plaintiff has not plausibly pled the subjective prong of the deliberate indifference standard for either Claim One or Claim Three as brought against Defendant Grokett.  [*Id.* at 8-9] The Court agrees

As to Claim One, the Court finds that Plaintiff has not alleged that Defendant Grokett knew of and disregarded an excessive risk to inmate health or safety.  In fact, Plaintiff alleges that Defendant Grokett facilitated Plaintiff's transportation to LCH for the ultrasound.  [#11 at 6-7]  Accordingly, Plaintiff has not plausibly alleged that Defendant Grokett failed to act despite her knowledge of Plaintiff's serious condition—Defendant Grokett enabled Plaintiff to receive an emergency medical evaluation.

Notably, Plaintiff also claims that Defendant Grokett sent Plaintiff back to his housing unit before he was able to express what took place at LCH.  [#11 at 5]  While it is possible that this action constitutes negligence, Plaintiff does not plausibly allege that Defendant Grokett consciously disregarded an excessive risk to Plaintiff's health and safety.  Plaintiff does not allege that Defendant Grokett was aware that Plaintiff had been

involuntarily prevented from receiving a necessary examination at LCH.  Nor does Plaintiff

allege that, after he was sent back to his housing unit, he complained of pain to Defendant

Grokett or sought care from Defendant Grokett.  And though Plaintiff's response to the

Motion contains the conclusory statement that, had he sought treatment after returning to

LCF from LCH, "further attempt to treat would have been denied" [#34 at 2][7] Plaintiff does

not make this allegation in his Amended Complaint and, in any event, Plaintiff does not

provide any facts to suggest that Defendant Grokett denied or planned to deny Plaintiff

further treatment after his return from LCH.  Plaintiff has thus not alleged that Defendant

Grokett consciously disregarded Plaintiff's medical needs, either before or after Plaintiff's

visit to LCH.  Accordingly, the subjective component of deliberate indifference is not

established as to Claim One.

As to Claim Three, the Court finds that Plaintiff has not plausibly alleged that

Defendant Grokett failed to treat Plaintiff.  Quite the opposite, Plaintiff alleges that

Defendant Grokett sent Plaintiff to LCH in the first place. [#11 at 6-7]  Indeed, Defendant

Grokett was not the nurse that initially examined Plaintiff [*id*. at 6] and the alleged facts

suggest that Defendant Grokett only acted as a facilitator in assuring that Plaintiff was

transported to LCH once it was determined that he had urgent medical needs that could

not be treated at LCF.  Thus, Defendant Grokett appropriately fulfilled her gatekeeper

role.  And Plaintiff does not allege that Defendant Grokett had any further involvement in

---

[7] It is unclear if Plaintiff was referring specifically to Defendant Grokett in this statement, or LCF personnel in general.  Additionally, the Complaint has an isolated sentence stating, in full: "Ignoring several medical request to be treated."  It is unclear from this statement who ignored Plaintiff's medical requests or when such medical requests were made.  Without more, the Court cannot attribute this conduct to Defendant Grokett.

Plaintiff's care after January 20 or that she was even aware that he was continuing to suffer from medical problems.  [*See generally* #11]

Though Defendant Grokett failed to inform the on-call provider that Plaintiff was not examined after his trip to LCH and failed to record what transpired at LCH, the Amended Complaint fails to suggest that Defendant Grokett knew of Plaintiff's involuntary lack of treatment.  [*Id.* at 7]  Regardless, this allegation does not amount to a plausible claim of failure to treat.  Defendant Grokett acted as a gatekeeper who could facilitate Plaintiff receiving treatment from another provider.  Plaintiff has not alleged any facts which would suggest that Defendant Grokett had any other involvement in Plaintiff's treatment.  At most, Defendant Grokett's failure to record what transpired at LCH and inform the on-call provider about the incident amounts to negligence, which does rise to the level of deliberate indifference.  *Crowson*, 983 F.3d 1180.  Accordingly, the subjective component is not established as to Claim Three.

Defendant Grokett is thus protected from Plaintiff's claims by the doctrine of qualified immunity because Plaintiff has not plausibly shown that Defendant Grokett violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.  Accordingly, the Court respectfully RECOMMENDS that the Motion be GRANTED with respect to Claims One and Three against Defendant Grokett.

### 2.    Retaliation

Plaintiff asserts a First Amendment retaliation claim against Defendant Wynter.  [*Id.* at 7-8]  Plaintiff alleges that Defendant Wynter entered two chronological reports falsely detailing the events that occurred at LCH on January 20, 2024, in retaliation for Plaintiff submitting grievances against Defendant.  [*Id.*]

The First Amendment prohibits officials from retaliating against individuals for exercising their constitutional rights. *Poole v. Cnty. of Otero*, 271 F.3d 955, 960 (10th Cir. 2001) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." (quotation omitted)), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). "In particular, officials may not retaliate against prisoners for filing administrative grievances." *Banks v. Katzenmeyer*, 645 F. App'x 770, 772 (10th Cir. 2016). To state a First Amendment retaliation claim against a government official, a plaintiff must prove three elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

In this case, Plaintiff has adequately pled that he was engaged in a constitutionally protected activity: filing an administrative grievance. [#11 at 8] However, Plaintiff has not adequately alleged the other two elements required for a First Amendment retaliation claim. Thus, his retaliation claim must be dismissed.

Defendants argue that Plaintiff has not adequately pled that Defendant Wynter's actions caused Plaintiff to suffer an injury, let alone injury that would chill a person of ordinary firmness from continuing to engage in protected activity. [#20 at 13] "The standard for assessing the chilling effect on protected activity is objective, and 'a trivial or de minimis injury will not support a retaliat[ion] . . . claim." *Hyberg v. Enslow*, 801 F. App'x 647, 651 (10th Cir. 2020) (quoting *Shero*, 510 F.3d at 1203). Plaintiff does not respond

to this contention.   Plaintiff vaguely states that the falsified chronological reports may affect a future application for clemency [#11 at 8], but he does not provide any details as to how the chronological reports would affect the application, whether Plaintiff has filed or intends to file an application, or why Plaintiff believes that he will potentially suffer this injury.  Without these details, the Court cannot conclude that Plaintiff has plausibly alleged that Defendant Wynter's retaliatory acts would objectively have a chilling effect on inmates filing grievances.

Additionally, Defendants argue that Plaintiff had not adequately pled that Defendant Wynter's actions were substantially motivated as a response to Plaintiff filing grievances against Defendant Wynter.  [#20 at 13]  "To satisfy the third prong of the First Amendment retaliation test, an inmate must allege specific facts showing that 'but for the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Banks*, 645 F.  App'x at 772 (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).  "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (quoting *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990)).  The Tenth Circuit has further explained:

> To make a prisoner's claim of retaliation by a prison official plausible, it must be supported by (1) specific facts about the adverse action taken against the prisoner to make it plausible that the action was not motivated by legitimate grounds and (2) specific facts showing why the particular official would be motivated to improperly harm the prisoner.

*Guy v. Lampert*, 748 F. App'x 178, 181 (10th Cir. 2018).  "In *Gee*, [the Tenth Circuit] found the 'but for' requirement satisfied where the inmate's complaint alleged that the defendants were aware of his protected activity, that the inmate complained of their

actions, and the retaliatory action was in close temporal proximity to the protected activity." *Banks*, 645 F. App'x at 772 (citing *Gee*, 627 F.3d at 1189). On the other hand, "generic and unspecific allegations that" a defendant acted in an alleged retaliatory manner after a plaintiff filed a grievance are "insufficient to satisfy the 'but for' requirement." *Id.* Conclusory allegations that a defendant fabricated information in a claim or report are not sufficient to infer that the defendant would not have filed such information absent a retaliatory motive. *Id.* at 772-73.

Thus, Plaintiff must show that but-for his grievances, Defendant Wynter would not have filed the false chronological reports. On this point, Plaintiff simply states that the false chronological reports were filed on March 20, 2024. [#11 at 7] This is not a specific fact that shows retaliation. Plaintiff does not allege that Defendant Wynter was aware of the grievances, that the chronological reports were filed shortly after the grievances were filed, or that Defendant Wynter had no other reason to file the chronological reports. Plaintiff merely states that Defendant Wynter did not originally file the reports because he thought the events at LCH were "not noteworthy." [*Id.* at 6] There are simply not any specific facts in the Amended Complaint that show that Defendant Wynter was motivated to improperly harm Plaintiff. Generic and unspecific allegations that Defendant Wyner acted in a retaliatory manner are insufficient to satisfy the third prong of the *Shero* test.

Plaintiff's response to the Motion contains the statement that "Defendant Wynter said in his own words, the reason he submitted two [chronological reports] against the Plaintiff is because Plaintiff made an accusation of misconduct." [#34 at 11] The Court cannot find this allegation anywhere in the Complaint. Accordingly, it cannot be used to determine whether Plaintiff has plausibly alleged an entitlement to relief. *In re Qwest*

*Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (holding that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss").  Plaintiff also makes the conclusory statement that Defendant Wynter filed the two reports "in an attempt to mislead grievance investigators."  [#34 at 11]  But, again, this was not alleged in the Complaint and cannot thus be used to argue against the merits of the Motion to Dismiss.  *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d at 1203.  Simply put, the Complaint does not contain any facts that plausibly suggest that Defendant Wynter was substantially motivated to file false reports by knowledge of the grievances that Plaintiff filed.[8]

Both element two and element three of the *Shero* test are thus inadequately pled. As a result, Defendant Wynter is protected from this claim by the doctrine of qualified immunity because Plaintiff has not shown that Defendant Wynter violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. Accordingly, the Court respectfully RECOMMENDS that the Motion to Dismiss be GRANTED as to Claim Four.

### B.    Failure to State a Cognizable Claim

Plaintiff brings an "abuse of discretion" claim against Defendant Stancil and Defendant Wynter.  [#11 at 6]  Plaintiff alleges that CDOC A.R. 300-37 "[a]uthorizes transport staff to deny medical treatment to offenders transported to hospital who are

---

[8]  In his response to the Motion, Plaintiff recites the elements of negligent misrepresentation and the procedural requirements for alleging fraud.  [#34 at 11-12] Plaintiff did not allege either of these as a basis for liability in the Amended Complaint. Therefore, whether Plaintiff has adequately pled negligent misrepresentation or fraud is of no consequence in determining whether Plaintiff's retaliation claim should be dismissed.

wearing restraints." [*Id.*]  Plaintiff cites a response to a grievance he filed, which states "[i]t is the officer's discretion to let the offender out of the restraints when requested by physician.  Medical attention can still be administered while in restraints." [*Id.*]  Plaintiff additionally alleges that the regulation "does not require transport officer[s] who deny medical professional['s] order[s] to treat by removing restraint[s] to report to [the] facility or supervisor their decision." [*Id.*]

Plaintiff claims that Defendant Stancil committed an abuse of discretion because he approves CDOC A.R.'s, and thus presumably approved the regulation at issue.  [*Id.*] Plaintiff claims that Defendant Wynter committed an abuse of discretion because he refused to allow Plaintiff to remove his restraints to receive an ultrasound and did not report this decision.  [*Id.*]  It appears that Plaintiff alleges that CDOC A.R. 300-37 should be "[c]hange[d]" because it "removes emergency medical treatment from the medical professional, giving it to the transport officer." [*Id.* at 6, 10]

Defendants argue that Plaintiff does not show he is entitled to relief, this is not a cognizable claim under section 1983, and Defendant Wynter is not an appropriate party against whom this claim may be brought.   [#20 at 10-12]   The Court agrees with Defendants that Plaintiff's allegations do not meet the standard outlined by Federal Rule of Civil Procedure 8(a).  Federal pleading rules require that a plaintiff make "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though this rule does not require that a plaintiff set out a particular legal theory for their claims for relief, plaintiffs must at least provide allegations of facts which entitle them to damages.  *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014).  Plaintiff does not do so here.  To the extent Plaintiff claims that his Eighth Amendment rights were violated

because the policy allowed Defendants to deny Plaintiff medical care [#34 at 9], the Court

has already addressed Plaintiff's Eighth Amendment claims above.  Beyond the denial of

medical care, the Court does not understand how Plaintiff was harmed by CDOC A.R.

300-37.  Nor has Plaintiff identified the source of an independent cause of action for

"abuse of discretion" that differs from Plaintiff's Section 1983 Eighth Amendment claim.

Accordingly, the Court respectfully RECOMMENDS that the Motion be GRANTED as to

Claim Two.

## IV.    CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that Defendants

Andre Stancil, Charles Wynter, and Christie Grokett's Motion to Dismiss [#20] be **DENIED**

with respect to Claim One against Defendant Wynter and **GRANTED** with respect to all

other Defendants and all other Claims.[9]

---

[9] Within fourteen days after service of a copy of this Recommendation, any party may
serve and file written objections to the magistrate judge's proposed findings of fact, legal
conclusions, and recommendations with the Clerk of the United States District Court for
the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla
(In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put
the district court on notice of the basis for the objection will not preserve the objection for
*de novo* review.  "[A] party's objections to the magistrate judge's report and
recommendation must be both timely and specific to preserve an issue for *de novo* review
by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73
F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo*
review by the district judge of the magistrate judge's proposed findings of fact, legal
conclusions, and recommendations and will result in a waiver of the right to appeal from
a judgment of the district court based on the proposed findings of fact, legal conclusions,
and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-
80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's
recommendation *de novo* despite lack of an objection does not preclude application of
"firm waiver rule"); *Int'l Surplus Lines Ins. Co.  v.  Wyo. Coal Refining Sys., Inc.*, 52 F.3d
901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain
portions of magistrate judge's order by failing to object to those portions); *Ayala v.  United
States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to
appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-*

DATED:   September 24, 2025                    BY THE COURT:

                                               s/Scott T. Varholak
                                               United States Magistrate Judge

---

*Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule
does not apply when the interests of justice require review).